IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PosiGen, PBC, *et al.*,[1] | ) Case No. 25-90787 (~~ARP~~CML) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) Re: Docket No. ~~___~~ 5 |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
(A) CONTINUE TO OPERATE THEIR EXISTING
CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING
BANK ACCOUNTS, BUSINESS FORMS, AND BOOKS AND RECORDS,
(C) PAY RELATED PREPETITION OBLIGATIONS, (D) MAINTAIN FUEL
CARD PROGRAM, AND (E) CONTINUE INTERCOMPANY TRANSACTIONS,
(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY
CLAIMS AMONG THE DEBTORS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") for entry of an interim order (this "**Interim Order**") (a) authorizing the Debtors to (i) continue operating their Cash Management System, (ii) maintain and continue to use their existing Bank Accounts, Business Forms, and Books and Records, (iii) pay related prepetition obligations, (iv) maintain their Fuel Card Program; and (v) continue to perform Intercompany Transactions, (b) granting administrative expense status to postpetition Intercompany Claims among the Debtors, and (c) granting related relief, as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28

---

[1] The last four digits of PosiGen, PBC's tax identification number are 9706. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/PosiGen. The Debtors' service address in these chapter 11 cases is 1000 Elmwood Park Boulevard, Suite A, Harahan, LA 70123.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

U.S.C. §§ 157 and 1334; and entry of this Interim Order being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that due, sufficient, and proper notice of the Motion was provided under the circumstances and in accordance with the Bankruptcy Rules and the Bankruptcy Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and all objections to the Motion, if any, having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The final hearing (the "**Final Hearing**") on the Motion shall be held on ~~_____~~December 17, 2025 at ~~[a./p.]m~~9:00 a.m. (prevailing Central Time). Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Central Time) on ~~_____~~December 11, 2025. In the event no objections to entry of the final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

2. The Debtors are authorized on an interim basis, to: (a) continue to manage and use the Cash Management System, to collect, concentrate, and disburse cash in accordance with the Cash Management System, including through Intercompany Transactions, and to make ordinary course changes to their Cash Management System; (b) designate, maintain, close, and

2

continue to use any or all of their existing Bank Accounts as of the Petition Date, including the Bank Accounts identified on **Exhibit 2** to the Motion; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, checks, electronic fund transfers, ACH transfers, and other debits or electronic means; (d) pay the Bank Fees, including any prepetition amounts, and any ordinary course Bank Fees incurred in connection with the Bank Accounts; (e) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; and (f) otherwise perform their obligations under the documents governing the Bank Accounts.

3.  Nothing contained herein shall prevent the Debtors from closing any Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders of this Court and with the terms of any prepetition financing agreement and postpetition financing agreement. Each Bank is authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall provide seven days' prior written notice of the closure of any account to the U.S. Trustee and any statutory committee.

4.  The Debtors are authorized to continue using the Business Forms and Books and Records in their present form, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date; *provided* that, to the extent the Debtors are authorized under applicable non-bankruptcy law, including any regulations promulgated by any regulatory body, once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor in Possession" and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession" within ten days of entry of this Interim Order.

5. The Cash Management Banks are authorized ~~and directed~~ to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

6. The Cash Management Banks are authorized ~~and directed~~ to debit the Bank Accounts in the ordinary course of business so long as there is adequate funding in the Bank Accounts without the need for any further order of this Court for: (i) all checks drawn on the Bank Accounts which are cashed at the Bank's counters or exchanged for cashier's checks by the payees thereof prior to or after the Petition Date; (ii) all checks or other items deposited in one of the Bank Accounts with the Bank prior to or after the Petition Date which have been dishonored or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to or after the Petition Date; (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business; and (iv) any postpetition amounts due and owing to the Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business.

7. The Debtors are authorized to maintain the Fuel Card Program and pay prepetition and postpetition amounts incurred on account of the Fuel Card Program pursuant to the terms of the Fuel Card Program in the ordinary course of business. Any existing agreements

between or among the Debtors and any bank in respect of the Fuel Card Program shall continue to govern the postpetition relationship between the Debtors and such banks, and all the provisions of such agreements, including the termination and fee provisions, rights, benefits, offset or setoff rights and remedies afforded under such agreements, shall remain in full force and effect. The Debtors and such bank may, without further order of this Court, agree to and implement changes related to the Fuel Card Program in the ordinary course of business, pursuant to the terms of those existing agreements.

8. The Debtors are authorized to open and maintain the Administrative Expense Escrow Account without further notice to or order of this Court.

9. The Administrative Expense Procedures are approved, and the Debtors are authorized and directed to perform under the Administrative Expense Procedures, including funding amounts in the Administrative Expense Escrow Account in accordance therewith without further notice or hearing.

10. The funds on deposit in the Administrative Expense Escrow Account shall not be available to general creditors of the Debtors' estate and shall be used only to fund (a) Bankruptcy Fees and (b) Professional Fees in the ordinary course and subject to any applicable Court approvals, except as otherwise ordered by the Court. All Bankruptcy Fees and Professional Fees shall be paid from the Administrative Expense Escrow Account in accordance with and subject to any applicable Court orders, including orders approving the payment of Professional Fees.

11. On Friday of every week following the Petition Date (the "**Weekly Reporting Date**"), the Debtors shall calculate an amount (the "**Weekly Variance Amount**") equal to (a) the sum of (i) the Debtors' good-faith estimate of the aggregate amount of all accrued and unpaid Professional Fees as of such Weekly Reporting Date based on estimates and invoices provided

by the Professionals and (ii) the Debtors' good-faith estimate of all accrued and unpaid Bankruptcy Fees as of such Weekly Reporting Date, minus (b) the aggregate balance in the Administrative Expense Escrow Account as of the applicable Weekly Reporting Date. If the Weekly Variance Amount is a positive number, then the Debtors shall transfer cash in an amount equal to the Weekly Variance Amount to the Administrative Expense Escrow Account by no later than 5:00 p.m. (prevailing Eastern Time) on the Tuesday following the applicable Weekly Reporting Date (or, if such date is not a business day, by 5:00 p.m. (prevailing Eastern Time) on the next available business day).

12. The Debtors are authorized to continue to enter into and engage in Intercompany Transactions, and to take any actions related thereto on the same terms as, and consistent with, the Debtors' operation of the business in the ordinary course during the prepetition period. All postpetition Intercompany Claims among the Debtors are accorded administrative expense priority status pursuant to sections 364(a) and 503(b)(1) of the Bankruptcy Code.

13. The Debtors shall continue to maintain current, detailed, and accurate records with respect to all transfers so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts, and distinguished between prepetition and postpetition transactions. The Debtors shall make such records available upon request by the U.S. Trustee or any statutory committee. To the extent that the transfers within the Cash Management system are disbursements, they will be noted and reflected on the monthly operating reports. Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes the disbursements or pays those disbursements.

14. To the extent relief is not granted in any order considering the Debtors' request to continue to pay the wages of employees of non-Debtor entity for which the employer-of-record is a Debtor entity, the Debtors are authorized to continue to pay the wages of such employees as Intercompany Transactions in the ordinary course of business.

15. Intercompany Transactions shall not constitute disbursements for purposes of calculating any amounts owed by the Debtors on account of quarterly fees payable to the U.S. Trustee.

16. The Debtors are authorized to continue to record and reconcile intercompany receivables and payables through the Cash Management System consistent with prepetition practices.

17. The Debtors shall provide reasonable notice to the U.S. Trustee and any statutory committee of material changes to the Cash Management System and procedures.

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

19. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized ~~and directed~~ to receive, process, honor, and pay all such checks issued, or to be issued, and electronic fund transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit in available funds in the applicable accounts to cover such payments. When presented for payment, all such banks and financial institutions are authorized to rely on all representations made by the Debtors with respect to which checks, drafts, wires or transfers should be honored or dishonored in accordance with this

or any other order of this Court, whether any such checks, drafts, wires or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

20. The Debtors are authorized to issue new postpetition checks or effect new postpetition electronic fund transfer requests, and to replace any prepetition checks or electronic fund transfer requests that are inadvertently dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid in connection with the relief granted herein.

21. Subject to the terms set forth herein, any bank, including a Cash Management Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors or (b) in a good faith belief that this Court has authorized and directed such prepetition check or item to be honored shall be deemed to be, nor shall be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

22. Notwithstanding anything to the contrary in any other order of this Court, any banks, including the Cash Management Banks, are (a) authorized ~~and directed~~ to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, (b) authorized ~~and directed~~ to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated prior to, on, or

8

subsequent to the Petition Date, and (c) have no duty to independently inquire as to whether such payments are authorized by an order of this Court; provided that the Cash Management Banks shall not have any liability to any party for relying on such representations.

23. The Debtors are authorized to coordinate with the Cash Management Banks to implement reasonable handling procedures designed to effectuate the terms of this Interim Order. No Cash Management Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any Bank Account that is the subject of this Interim Order either (a) in good faith belief that the Court has authorized and directed such prepetition check or item to be honored or (b) as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates otherwise in violation of this Interim Order.

24. All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. Nothing contained in the Motion or this Interim Order, nor any action taken pursuant thereto, nor any payment made pursuant to the authority granted thereby, is intended to be or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a release, waiver, or limitation of any claim or cause of action that the Debtors have (or may have) against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a release,

waiver, or limitation of any of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Motion are valid and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any such liens.

26. Nothing in this Interim Order shall affect, limit, or impair any entities' rights or obligations with respect to any cash, revenues, receipts, proceeds, payments, receivables, or other amounts, including for the avoidance of doubt (a) any cash, revenues, receipts, proceeds, payments, receivables, or other amounts owned by PosiGen Backleverage LLC or any of its direct or indirect subsidiaries (whether wholly or partially owned), including, without limitation, the Rooftop Project Companies, as defined at Docket No. 11, (collectively, the "**Backleverage Entities**") or arising from or otherwise attributable to assets of any Backleverage Entity and (b) whether any such cash, revenues, receipts, proceeds, payments, receivables, or other amounts are subject to a valid and perfected lien or constitute property of the Debtors' estates. Notwithstanding anything in this Interim Order to the contrary, the foregoing preservation and reservation of rights applies to any cash deposited in the Administrative Expense Escrow Account.

27. ~~26.~~ The requirements of Bankruptcy Rule 6003(b) have been satisfied.

28. ~~27.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

29. ~~28.~~ Notwithstanding Bankruptcy Rule 2022(a)(2), to the extent appliable, the Debtors may limit service of the Motion only to the core service list and affected creditors. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such

Motion and the requirements of Bankruptcy Rule 6004(a), the Bankruptcy Local Rules, and the *Procedures for Complex Cases in the Southern District of Texas* are satisfied by such notice.

30. ~~29.~~ This Interim Order shall be fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of these chapter 11 cases, in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the chapter 11 cases, and/or upon the dismissal of any of the chapter 11 cases or any such successor cases.

31. ~~30.~~ Any party that accepts payments from the Debtors pursuant to this Interim Order shall be deemed to have voluntarily submitted themselves to the jurisdiction of this Court on account of accepting payment pursuant to an order of this Court.

32. ~~31.~~ This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated: _____, 2025
Houston, Texas

_____
~~ALFREDO R. PÉREZ~~
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Cash Management Schematic**

1

131954649

**Exhibit 2**

**Debtor Bank Accounts**

| Entity | Bank | Account Number | Account Type |
|---|---|---|---|
| PosiGen, PBC | Bank of America | x9073 | BoA Promissory Note Funding Account |
| PosiGen Developer, LLC | Bank of America | x5031 | BoA Inactive Account |
| PosiGen Developer, LLC | Bank of America | x6868 | BoA Inactive Account |
| PosiGen Developer, LLC | Bank of America | x6897 | BoA Inactive Account |
| PosiGen Developer, LLC | Bank of America | x6907 | BoA Inactive Account |
| PosiGen Developer, LLC | Bank of America | x7621 | BoA Inactive Account |
| PosiGen Developer, LLC | Bank of America | x7760 | BoA Inactive Account |
| PosiGen, PBC | Bank of America | x5594 | BoA Inactive Account |
| PosiGen Developer, LLC | First Horizon Bank | x8078 | First Horizon Concentration Account |
| PosiGen, PBC | First Horizon Bank | x7999 | First Horizon SREC Collection Account |
| PosiGen Developer, LLC | First Horizon Bank | x0369 | Payroll Account |
| PosiGen Developer, LLC | Bank of America | x6994 | Payroll Escrow Account |
| PosiGen, LLC | First Horizon Bank | x0303 | First Horizon Receivable Collection Account |
| PosiGen Developer, LLC | First Horizon Bank | x4710 | Utilities Adequate Assurance Account |
| PosiGen Owner 3, LLC | First Horizon Bank | x3129 | First Horizon Inactive Account |
| PosiGen Owner 3, LLC | First Horizon Bank | x3157 | First Horizon Inactive Account |
| PosiGen Owner 3, LLC | First Horizon Bank | x3917 | First Horizon Inactive Account |
| PosiGen Developer, LLC | KeyBank | x9579 | First Horizon CT Disbursement Account |
| PosiGen, PBC | KeyBank | x0127 | KeyBank Lease Revenue Tax Account |
| PosiGen, PBC | KeyBank | x0135 | KeyBank Lease Revenue Collection Account |
| PosiGen Developer, LLC | KeyBank | x3252 | KeyBank ZBA Master Account |
| PosiGen Developer, LLC | KeyBank | x0244 | KeyBank Disbursement Account |
| PosiGen Developer, LLC | KeyBank | x0972 | KeyBank Disbursement Account |
| PosiGen Developer, LLC | KeyBank | x7844 | KeyBank Disbursement Account |

1

2

| PosiGen Developer, LLC | KeyBank | x7851 | KeyBank Disbursement Account |
| PosiGen Developer, LLC | KeyBank | x7836 | KeyBank Disbursement Account |
| PosiGen Developer, LLC | KeyBank | x7828 | KeyBank Disbursement Account |
| PosiGen Developer, LLC | KeyBank | x7794 | KeyBank Disbursement Account |

| Summary report: Litera Compare for Word 11.12.0.83 Document comparison done on 11/25/2025 6:55:37 PM ||
|---|---|
| **Style name:** AA Style ||
| **Intelligent Table Comparison:** Active ||
| **Original DMS:** iw://americasdms.whitecase.com/AMERICAS/131954649/1 ||
| **Modified DMS:** iw://americasdms.whitecase.com/AMERICAS/131954649/3 ||
| **Changes:** ||
| Add | 14 |
| Delete | 17 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 31 |